IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARVEY MIGUEL ROBINSON, JR., )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LOUIS S. FOLINO; PETER VIDONISH, )<br>*Sued in their individual capacities,* )<br>Defendants. ) | Civil Action No. 14-227<br>Chief Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 36 |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff Harvey Miguel Robinson, Jr. ("Plaintiff"), is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional Institution at Greene ("SCI-Greene"). Plaintiff brings this civil rights action against Defendants Louis S. Folino ("Folino"), the Superintendent at SCI-Greene, and Peter Vidonish ("Vidonish"), the Unit Manager at SCI-Greene in charge of capital case prisoners, (collectively, "Defendants"), alleging that Defendants violated his rights provided by the First Amendment to the United States Constitution.

Presently before the Court is a Motion for Summary Judgment ("the Motion"), submitted on behalf of Defendants. ECF No. 36. For the reasons that follow, the Motion will be granted in part and denied in part.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that several weeks after he was transferred back to SCI-Greene in July of 2011, he and Vidonish had a verbal exchange during which Vidonish allegedly threatened to find a way to issue a misconduct against Plaintiff if he continued to file grievances and lawsuits against the prison staff. ECF No. 1-2 ¶¶ 13-16. The record shows that Vidonish, in fact, issued a

misconduct against Plaintiff on October 12, 2011, for "lying to an employee." ECF No. 39-1 at 7. The misconduct was based on an alleged misstatement made by Plaintiff in a grievance he filed on September 29, 2011, wherein Plaintiff took issue with the finding that he "declined" to participate in a review before the Program Review Committee ("PRC") which, unbeknownst to Plaintiff, had been scheduled for, and took place on, September 14, 2011. ECF No. 39-1 at 2, 4. Plaintiff had previously signed up to use the law library on that date and thus represented in the grievance that he was in library while the meeting was going on and that, because he was unaware that the meeting had taken place, he did not "decline" to attend. Id. at 4. It appears, however, that Plaintiff was not in the law library as he indicated in the grievance but had been taken to an outside hospital for a medical test on September 14, 2011, thereby laying the ground work for the misconduct for lying to an employee issued by Vidonish. Id. at 5, 7.

Plaintiff subsequently appealed the misconduct through the final level of review which was denied on December 20, 2011. Id. at 9-18. Thereafter, Plaintiff initiated the instant action in the Court of Common Pleas of Greene County, Pennsylvania, by filing a Motion to Proceed *in forma pauperis*. Id. at 20. The Motion was granted on January 17, 2014, and the court simultaneously ordered service of the Complaint wherein Plaintiff has brought a retaliation claim under the First Amendment against Vidonish (Count I), and state law claims against Folino under the doctrines of respondeat superior (Count II) and vicarious liability (Count III). Id. See ECF No. 1-2. Defendants removed the case to this Court on February 18, 2014, ECF No. 1, and filed a Motion to Dismiss on March 17, 2014. ECF No. 4. The Motion to Dismiss was granted by the undersigned on October 29, 2014, finding that Plaintiff had failed to state a retaliation claim under the First Amendment. ECF No. 16. The United States Court of Appeals for the

Third Circuit, however, disagreed and remanded the case on February 25, 2016, for further proceedings. ECF No. 24.

On August 15, 2016, following a period of discovery, Defendants filed the instant Motion for Summary Judgment, along with a brief and concise statement of material facts, ECF Nos. 36-38, in which they argue that Plaintiff's First Amendment retaliation claim is barred by the applicable two year statute of limitations and that Plaintiff is otherwise unable to establish his claims against Folino.[1] Plaintiff filed a Response and a statement of disputed facts on January 11, 2017. ECF Nos. 52, 53. Defendants filed a Reply brief and response to Plaintiff's statement of facts on January 17, 2017. ECF Nos. 54, 55.

With respect to the statute of limitations issue, Defendants argue that because Plaintiff exhausted his administrative remedies on December 20, 2011, Plaintiff was obligated to initiate the instant action, which simply requires Plaintiff to deliver the Complaint to prison authorities, by December 20, 2013. See Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) (federal courts apply the state statute of limitations for personal injury in Section 1983 cases which in Pennsylvania is two years); Paluch v. Sec'y Pa. Dep't Corr., 442 F. App'x 690, 694 (3d Cir. 2011) ("the statute of limitations applicable to § 1983 actions may be tolled while a prisoner exhausts); id. at 693, *citing* Houston v. Lack, 487 U.S. 266, 276 (1988) ("[b]ecause Paluch is a prisoner, he receives the benefit of the "prison mailbox rule," and his motion was deemed filed at the time he delivered it to prison authorities for forwarding to the District Court").

Although the Complaint and the accompanying "cash slip" that Plaintiff handed to the pod officer, and which Defendants have submitted with their Motion as Exhibit 5, is dated

---

[1] Defendants have not challenged Plaintiff's First Amendment retaliation claim on substantive grounds but ask that summary judgment be granted in their favor solely because the claim is time-barred.

December 19, 2013, the cash slip also reflects that it was signed by the pod officers and by the mailroom as having been received on December 30, 2013.[2] ECF 39-1 at 23. Defendants have also submitted a Declaration from the Mailroom Supervisor at SCI-Greene, Dean Geehring ("Geehring"), in which he attests to the fact that the mail is picked up every day from Plaintiff's unit and that the mailroom staff processes the mail as soon as it is received, which includes stamping the cash slip submitted by the inmate so as to reflect the date it was received. Id. ¶¶ 3, 5. Defendants therefore conclude that Plaintiff back-dated the Complaint and the cash slip to December 19, 2013, but did not actually submit it for mailing until December 30, 2013, rendering it untimely.

In response, Plaintiff argues that sometimes the guards on the unit responsible for stamping the cash slips forget to do so requiring the mailroom to return the envelop and the cash slip to the prisoner. ECF No. 52 at 3. In addition to his own Declaration, in which Plaintiff contends that it can take anywhere from one to fourteen days for a prisoner to receive the envelop and unstamped cash slip back from the mail room, Plaintiff has submitted two declarations from fellow inmates who have attested to the fact that they have occasionally received mail back from the mailroom "many days" after it was mailed informing them that it had not been stamped by the staff. ECF No. 52 at 2, 3; ECF No. 52-3; ECF No. 52-4. Plaintiff, however, has not alleged, or argued, that he received the instant Complaint back from the mailroom for want of the unit stamp and Geehring has stated in his supplemental Declaration filed in conjunction with Defendants' Reply brief that an unsigned cash slip is returned to the unit for the officers' signatures, returned to the mailroom and processed "the next day at the latest." ECF No. 54-1 ¶ 5.

---

[2] The "cash slip" which accompanies prisoner mail is how the inmate pays for the postage and also serves to verify that it was mailed.

4

Based on these assertions, the Court determined that a genuine issue of material fact exists regarding the date that Plaintiff submitted the Complaint to the prison staff for mailing and thus whether it was timely filed. Accordingly, the Court scheduled a hearing to further develop the record on the issue, which was held before the undersigned on March 7, 2017. As such, the Motion is now ripe for review.

## II.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where

5

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007), *quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

### III. DISCUSSION

#### A. First Amendment Retaliation Claims (Count I)

As previously discussed, an evidentiary hearing was held before the undersigned on March 7, 2017, relative when Plaintiff submitted the Complaint for filing and whether his First amendment claims are barred by the statute of limitations. During the hearing, the Court heard testimony from defense witnesses Richard Jenkins ("Jenkins"), a Sergeant on the capital case unit at SCI-Greene where Plaintiff is housed, and Geehring. In addition, Plaintiff, who participated at the hearing from SCI-Greene by video conferencing, was permitted to testify and apprise the Court of any information he had relevant to the issue.

Both Jenkins and Geehring testified generally as to the procedures for processing inmate mail. Jenkins testified that on L-block, the capital case unit where Plaintiff is housed, prisoner mail, along with the cash slip that is filled out and dated by the inmate, is collected by a pod officer around 6:15 a.m. The pod officer stamps the cash slip showing that it is from L-block and initials it. The officer then takes the mail and the cash slip and hands them to the Sergeant in the "control bubble," who also signs the cash slip and then places it in the mail bag. A staff

member from the mailroom then picks up the mailbag, usually around 8:00 a.m., and takes it to the mailroom for processing. If mail is received in the mailroom without the requisite signatures from the pod officer and the bubble Sergeant on the cash slip, it is returned to the inmate by the next day. Although Jenkins testified that the process always works the same, he also agreed that delays do occur but only for a day or two and that in his experience there has never been an eleven day delay. According to Jenkins, the mail is picked up Monday through Friday only and not on the weekends or on holidays.

Geehring testified that he has been the mailroom supervisor at SCI-Greene for 23 years and largely corroborated Jenkins recitation of how inmate mail is processed: the pod officer collects the mail and cash slips from the inmates in the morning, stamps and signs it, delivers it to the Sergeant on duty, who also signs the cash slip and places it into the mail bag. The mail bag is picked from the unit every day at 8:00 a.m. by a mailroom staff member and taken to the mailroom. Once in the mailroom, the mail is separated and checked to make sure that the cash slips contain the two requisite signatures from the pod officer and the bubble Sergeant. Cash slips that have not been properly signed are returned to the unit on the same day and received back in the mailroom the next day. Geehring also testified that in his experience there would never be an eleven day delay. He also allowed that December/Christmas time is an extremely busy with hundreds of stacks of mail to be processed but that all the mail is processed the same day even if he has to put another staff member on it.

Neither Jenkins or Geehring, however, could specifically speak to Plaintiff's particular piece of mail at issue or the accompanying cash slip. Indeed, Jenkins did not even work on L-block in December of 2013. Nor could either witness identify the signatures/initials of the two

7

pod officers that had allegedly initialed the cash slip on December 30, 2013, and neither of those officers was called to testify.[3]

For his part, Plaintiff testified that he handed the envelope containing his Complaint to the pod officer on December 19, 2013, as he indicated on the cash slip. Plaintiff, however, could not recall which officer he gave it to or specifically what time he handed it to the officer as different officers collect the mail at different times. Plaintiff also allowed that once he, or any other inmate, hands mail to the pod officer, they no longer have control over it or know what happens to it or whether the normal procedures are followed. Moreover, Plaintiff has presented evidence through his own testimony and two declarations submitted by fellow inmates, that collected mail is frequently set down on the desk in the bubble office where other things are going on, and other guards are picking up the mail and setting it back down. ECF Nos. 52-3, 52-4. Although the suggestion is that the officers could get distracted and/or interfere with the mail so that it is not properly processed, no evidence was presented suggesting that anything occurred on December 19, 2013, to distract the officers or that the mail was not properly processed on that date. Plaintiff also testified that, contrary to Defendants' assertions, delays in processing mail is not uncommon and the declarations he has submitted reflect that on occasion mail with the cash slips attached would be returned from the mailroom "many days" after it was mailed because the L-block staff did not stamp it. Notably, however, Plaintiff testified that the cash slip at issue in this case was never returned to him because it was not stamped.

Having carefully considered the evidence and the arguments presented at the hearing as well as the parties' earlier submissions filed in conjunction with the instant Motion, the Court finds that genuine issues of material fact with respect to whether Plaintiff's claims are time-

---

[3] Furthermore, Geehring relayed to the Court that the "Bookkeeper" in the mailroom who allegedly "signed" the cash slip on December 30, 2013, has since passed away.

8

barred remain for trial. Although Defendants have presented evidence regarding the normal procedures for collecting and processing inmate mail and that there is never any variation, Plaintiff has presented evidence to the contrary. Moreover, although Geehring and Jenkins testified that mail is stamped the day it is received and that mail is only collected Monday through Friday, and not on the weekends or holidays, the Court takes judicial notice of the fact that December 30, 2013 -- the date that Defendants contend Plaintiff's Complaint and cash slip were handed to the pod officer and collected and processed by the mailroom -- was a Sunday, thereby raising additional questions regarding the dates reflected on the cash slip. Under these circumstances, Defendants' Motion for Summary Judgment in this regard is properly denied.

The Court notes that generally the question of whether a statute of limitations on a claim has expired is a question of law for the Court to decide. However, where, as here, the issue involves a factual determination, the determination is for the jury. Knopick v. Connelly, 639 F.3d 600, 606 (3d Cir. 2011), *quoting* Hayward v. Med. Ctr. of Beaver Cnty., 608 A.2d 1040 (Pa. 1992) ("[w]hether the statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury").

### B. Claims against Defendant Folino for *respondeat superior* and vicarious liability (Counts II and III)

Plaintiff purports to bring claims for *respondeat superior* and vicarious liability against Defendant Folino under state law. Under Pennsylvania law, however, there is no independent cause of action for *respondeat superior* or vicarious liability. See Black v. Cmty. Educ. Centers, Inc., No. 13-6102, 2014 WL 859313, at *7 (E.D. Pa. Mar. 4, 2014), *quoting* Olschefski v. Red Lion Area Sch. Dist., No. 12-871, 2012 WL 6003620, at *6 (M.D. Pa. Nov. 30, 2012) ("under Pennsylvania law 'there is no separate cause of action for respondeat superior liability'"). Rather, these doctrines merely permit liability to be imputed "once an underlying theory of

9

liability has been established." Care v. Reading Hosp. & Med. Ctr., No. 04121, 2004 WL 728532, at *13 (E.D. Pa. Mar. 31, 2004). See Sherman v. John Brown Ins. Agency Inc., 38 F. Supp. 3d 658, 670 (W.D. Pa. 2014). Because Plaintiff seeks to hold Folino liable for Vidonish's alleged violation of federal law, *i.e.* Plaintiff's First Amendment rights under Section 1983, Plaintiff is necessarily seeking to hold Folino liable under Section 1983 as well.[4]

It is well established, however, that "'[a][n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" Evanchco v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), *quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). See Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007) (a supervisor can only be held liable if his or her own actions resulted in the constitutional injury).

Here, not only has Plaintiff labelled his claims brought at Counts II and III of the Complaint "State Tort -- Liability" claims under theories of respondeat superior and vicarious liability, but he alleges therein that Folino is liable to him merely because Folino is the Superintendent at SCI-Greene, and thus is responsible for the conduct of the employees there, and Vidonish was acting within the scope of his employment when he allegedly retaliated against Plaintiff by issuing a misconduct. ECF No. 1-2 at 17-19. It is clear from these allegations, coupled with Plaintiff's present insistence that he is bringing state law claims brought against Folino, that Plaintiff seeks to hold Folino liable solely because he is Vidonish's supervisor.

---

[4] Notably, in all of the cases cited by Plaintiff to support his position that Folino may be held liable under state law theories of *respondeat superior* and vicarious liability, the underlying causes of action -- all brought in state court -- were state law claims and not brought pursuant to Section 1983. Easter v. Hancock, 346 A.2d 323 (Pa. Super. Ct. 1975) (medical malpractice action); Com. Dep't of Pub. Welfare for Use of Molek v. Hickey, 582 A.2d 734 (Pa. Commw. Ct. 1990) (wrongful death action); R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 696 (Pa. Super. Ct. 2000) (negligence action).

Folino, however, cannot be held liable for Vidonish's conduct on that basis and Counts II and III of the Complaint therefore are properly dismissed.[5]

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment submitted on behalf of Defendants is properly granted in part and denied in part. Accordingly, the following Order is entered:

### **ORDER**

AND NOW, this 13th day of March, 2017, upon consideration of Defendants' Motion for Summary Judgment, Plaintiff's Response to Defendants' Motion for Summary Judgment, Defendant's Reply Brief, and the evidence and argument made at the March 7, 2017 hearing, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment, ECF No. 36, is GRANTED as to Plaintiff's claims for *respondeat superior* liability and vicarious liability brought against Folino at Counts II and III of the Complaint, and DENIED as to Plaintiff's First Amendment retaliation claim brought against Vidonish at Count I. The case will be scheduled for trial as to the statute of limitations issue and the remaining retaliation claim brought against Vidonish.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[5] The Court also notes here that although Plaintiff asserts in the Complaint that "[u]pon information and belief," there is an unwritten policy of prison staff retaliating against prisoners for filing grievances and that Folino is fully aware of the practice but does nothing to stop it, ECF No. 1-2 ¶ 81, he has not presented any evidence to support his otherwise conclusory allegation and thus is unable survive summary judgment.

cc: Harvey Miguel Robinson, Jr.
CJ-8032
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370

All Counsel of Record Via CM-ECF